IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO


NERITZA ANDUJAR IGLESIAS

    Plaintiff

       v.

D'MART INSTITUTE, INC.

    Defendant

**CIVIL NO.** 09-1918 (JAG)


## OPINION AND ORDER

GARCIA-GREGORY, D.J.

    Before the Court stands defendant D'Mart Institute, Inc.'s ("D'Mart") motion for summary judgment. (Docket Nos. 44 and 46). The Court referred D'Mart's motion to Magistrate Judge Velez Rive for a Report and Recommendation. The Magistrate recommended that the summary judgment motion be denied. (Docket No. 96). D'Mart timely objected to the Report and Recommendation. (Docket No. 98). For the reasons stated below, the Court **ADOPTS** the Magistrate's Report and Recommendation and the motion for summary judgment is hereby **DENIED**.


## BACKGROUND

    Plaintiff Neritza Andujar Iglesias ("Andujar") filed a complaint against D'Mart alleging employment discrimination on account of her gender and pregnancy, as well as retaliation. Andujar filed her claim pursuant to Title VII, 42 U.S.C. 2000e *et seq.* Andujar also invoked pendent jurisdiction pursuant to 29 L.P.R.A. §469 *et seq.*, §146 and 1321, *et seq.* (state anti-

Civil No. 09-1918(JAG)                                               2

discrimination statutes), tort and the state constitution.
(Docket No. 1).

　　　The Court referred D'Mart's summary judgment motion to
Magistrate Velez Rive for a Report and Recommendation. The
Magistrate determined that the motion for summary judgment
should be denied. D'Mart objects to the Magistrate's conclusion
on several grounds: a) the Magistrate Judge erred when she
determined that Andujar's affidavit was sufficient to defeat its
summary judgment motion; b) the Magistrate erred when she
determined that Andujar was an employee and not an independent
contractor; c) the Magistrate erred when she determined that
Andujar established a *prima facie* case of discrimination based
on pregnancy; d)the Magistrate erred when she concluded that the
proffered reason for the employment termination is disputed; and
e) the Magistrate erred when she determined that there are
genuine issues of material fact in dispute.


                              **STANDARD**

　　**A. Motion for Summary Judgment**

　　　A motion for summary judgment is governed by Rule 56 of the
Federal Rules of Civil Procedure, which entitles a party to
judgment if "the movant shows that there is no genuine dispute
as to any material fact and the movant is entitled to judgment
as a matter of law." Fed.R.Civ.P. 56(a). "A dispute is genuine
if the evidence about the fact is such that a reasonable jury
could resolve the point in favor of the nonmoving party."
Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (internal
citations omitted); Calero-Cerezo v. U.S. Dep't of Justice, 355
F.3d 6, 19 (1st Cir. 2004) (stating that an issue is genuine if
it could be resolved in favor of either party); see also
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986).
In order for a disputed fact to be considered material it must

Civil No. 09-1918(JAG)                                         3

have the potential "to affect the outcome of the suit under
governing law." <u>Sands v. Ridefilm Corp.</u>, 212 F.3d 657, 660-661
(citing <u>Liberty Lobby, Inc.</u>, 477 U.S. at 247-248); <u>Prescott</u>, 538
F.3d at 40 (citing <u>Maymi v. P.R. Ports Auth.</u>, 515 F.3d 20, 25
(1st Cir. 2008)).

      The ethos of summary judgment is to "pierce the pleadings
and to assess the proof in order to see whether there is a
genuine need for trial." <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 306
(1st Cir. 1997)(citing FED. R. CIV. P. 56 (e) advisory committee
note to the 1963 Amendment). The moving party must demonstrate
the absence of a genuine issue as to any outcome-determinative
fact on the record. <u>Shalala</u>, 124 F.3d at 306. Upon a showing by
the moving party of an absence of a genuine issue of material
fact, the burden shifts to the nonmoving party to demonstrate
that a trier of fact could reasonably find in his favor. <u>Id.</u>
(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). The
nonmovant may not defeat a "properly focused motion for summary
judgment by relying upon mere allegations," but rather through
definite and competent evidence. <u>Maldonado-Denis v. Castillo
Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994). The nonmovant's
burden thus encompasses a showing of "at least one fact issue
which is both 'genuine' and 'material'." <u>Garside v. Osco Drug,
Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990); <u>see also</u> <u>Suarez v. Pueblo
Int'l</u>, 229 F.3d 49, 53 (1st Cir. 2000) (stating that a nonmovant
may shut down a summary judgment motion only upon a showing that
a trial worthy issue exists). As a result, the mere existence of
"some alleged factual dispute between the parties will not affect
an otherwise properly supported motion for summary judgment."
<u>Liberty Lobby</u>, Inc., 477 U.S. at 247-248. Similarly, "summary
judgment may be appropriate if the nonmoving party rests merely
upon conclusory allegations, improbable inferences, and

Civil No. 09-1918(JAG)                                          4

unsupported speculation." <u>Medina-Muñoz v. R.J. Reynolds Tobacco</u>
<u>Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

    When considering a motion for summary judgment, the Court
must examine the facts in the light most favorable to the
nonmoving party and draw all reasonable inferences in its favor
in order to conclude whether or not there is sufficient evidence
in favor of the nonmovant for a jury to return a verdict in its
favor. <u>Rochester Ford Sales, Inc. v. Ford Motor Co.</u>, 287 F.3d 32,
38 (1st Cir. 2002). The Court must review the record as a whole
and refrain from engaging in an assessment of credibility or
weigh the evidence presented. <u>Reeves v. Sanderson Plumbing</u>
<u>Products, Inc.</u>, 530 U.S. 133, 135 (2000)(internal citations
omitted). The burden placed upon the nonmovant is one of
production rather than persuasion. In other words, in weighing a
nonmovant's opposition to summary judgment the Court should not
engage in jury-like functions related to the determination of
credibility.

    **B. Motion for Reconsideration**

    Pursuant to 28 U.S.C. § 636(b)(1), Fed.R.Civ.P. 72(b), and
Local Rule 159, a district court may refer dispositive motions
to a United States magistrate judge for a report and
recommendation. The adversely affected party may contest the
report and recommendation by filing objections within fourteen
days of being served with a copy of the order. 28 U.S.C. §
636(b)(1). If objections are filed in a timely manner, the
district judge shall "make a *de novo* determination of those
portions of the report or specified findings or recommendation
to which [an] objection is made." <u>Rivera-De-Leon v. Maxon Eng'g</u>
<u>Servs.</u>, 283 F.Supp.2d 550, 555 (D.P.R. 2003). A district court
can "accept, reject, or modify, in whole or in part, the

Civil No. 09-1918(JAG)                                                5

findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**ANALYSIS**

**A. Andujar's Affidavit**

D'Mart strongly objects to the Magistrate's conclusion that summary judgment be denied. D'Mart argues that the Magistrate improperly relied on Andujar's declaration under penalty of perjury in reaching her conclusion. According to D'Mart, Andujar's declaration should not be considered at all by the Court because it is a sham affidavit.

The sham affidavit doctrine "states that a party may not attempt to artificially create an issue of fact in order to prevent summary judgment by filing an affidavit that contradicts its prior testimony." Rivera-Rocca v. RG Mort. Corp., 535 F.Supp.2d 276, 285 n. 5 (D.P.R. 2008). Therefore, a court may disregard portions of the affidavit containing unexplained inconsistencies between the affidavit and the affiant's prior deposition. Melendez-Ortiz v. Wyeth Pharmaceutical Co., 775 F.Supp.2d 349, 365 (D.P.R. 2011)(citing Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4-5 (1st Cir. 1994)).

D'Mart argues that Andujar's declaration under penalty of perjury (Docket No. 53-2) contradicts the contract between the parties (Docket Nos. 91-14 and 91-1). The Court finds this argument unconvincing. D'Mart cites to service contracts for the proposition that they contain specific language that establishes that Andujar was an independent contractor. However, Andujar's affidavit states that in practice the contracts were not applied according to their terms. The Court is unable to conclude that Andujar was an independent contractor merely because the service contracts describe the position as such.

D'Mart further argues that Andujar's affidavit (Docket No. 53-2) is in direct conflict with the testimony provided by her

Civil No. 09-1918(JAG)                                        6

during her deposition (Docket No. 67-13). Essentially, D'Mart
states that in her deposition Andujar stated that that she only
requested a medical certificate on a couple of occasions and
that in her affidavit Andujar states that every time that she
had a medical appointment she had to bring a medical
certificate. The Court does not find these statements to be
contradictory and accordingly finds D'Mart's argument
unavailing. Andujar's statements in her deposition may be
confusing, however, in that they do not readily contradict the
statements in her affidavit.

     D'Mart proceeds to point out a discrepancy between
Andujar's statements during her deposition and the statements in
her affidavit. In her affidavit, Andujar states that she did not
testify that Ms. Viera asked her to reconsider her decision of
not signing the contract. In her affidavit, Andujar posits that
Ms. Viera told her that she had to sign the contract and did not
have a right to maternity leave. (Docket No. 53-2). D'Mart
argues that this is in direct conflict with her statements
during deposition (Docket no. 67-13 at p. 14). The Court agrees
that there appears to be some conflict. During her deposition,
Andujar stated that Ms. Viera told Andujar that she should
"really think it over." However, it is not readily apparent how
this possible contradiction invalidates Andujar's affidavit in
its entirety.

     D'Mart proceeds to target other statements in Andujar's
affidavit. Specifically, D'Mart states that Andujar's affidavit
at paragraph 60 is in conflict with her statement of material
facts. (Docket No. 53). The Court is unclear about how these two
statements are in conflict. Without more from D'Mart, the Court
is unable to properly conclude that there is a contradiction
between these statements.

Civil No. 09-1918(JAG)                                               7

D'Mart makes the same argument regarding Andujar's statement at paragraph 64 of her affidavit. D'Mart posits that this statement is in direct conflict with her deposition. (Docket No. 67, p. 44). Again, the Court fails to see how these statements are in conflict. D'Mart does not help matters by making general arguments that do not seem to hold up under scrutiny. Thus, in the absence of any sort of argument on D'Mart's part, aside from claiming that various statements are contradictory, the Court is simply unable to agree.

D'Mart's next argument enjoys even less clarity than its previous averments. D'Mart posits that paragraphs 3,4,5,7,8,10,11,12,14,48,54, and 78 of Andujar's affidavit must be disregarded because these statements were not made during the deposition. It seems that D'Mart is asking the Court to extend the sham affidavit doctrine. In other words, D'Mart objects to various statements because they were not mentioned in the deposition. D'Mart attempts to bolster its argument by claiming that these enumerated statements contradict the service agreement between the parties. The Court is rather perplexed by this line of argument and concludes that it provides insufficient information that would assist the Court in concluding that Andujar's affidavit is a sham.

D'Mart proceeds to argue that paragraph 57 of Andujar's affidavit should not be considered because it is not based on personal knowledge. Paragraph 57 states that Mrs. Rivera mockingly told Andujar that she expected her to be fatter due to her pregnancy. In her affidavit, Andujar states that Mrs. Rivera's comment was made to communicate that she was not happy with Andujar's pregnancy. D'Mart posits that this statement should be disregarded because it is not based on personal knowledge. D'Mart also argues that paragraph 57 should be disregarded because it conflicts with pages 11 and 16 from

Andujar's deposition. (Docket No. 67-13). Again, the Court finds
no such contradiction. It is also unclear to the Court as to why
Andujar is incompetent to testify regarding Mrs. Rivera's
alleged statements.

Lastly, D'Mart argues that paragraphs 2,21,23,25,26,27,28
and 48 from Andujar's affidavit should be disregarded because
they are not statements of fact. D'Mart does not provide any
further explanation for its argument. The Court finds no reason
to disregard any of these paragraphs.

In light of the foregoing, the Court finds no reason to
conclude that Andujar's affidavit is a sham.

The Court notes that D'Mart's and Andujar's motions are
exceptionally hard to follow due to counsels' penchant for
citing to exhibits without providing the docket number. Counsel
for both parties are hereby advised that in the future these
unclear filings will not be tolerated.

### B. Whether or not Andujar was an employee

D'Mart vehemently argues that Andujar was not an employee
and as a result Andujar's Title VII claims are unable to gain
traction. The terms "employer" and "employee" are defined under
Title VII with reference to common law agency principles. Lopez
v. Massachusetts, 588 F.3d 69, 83 (1st Cir. 2009). Additionally,
the common law element of control serves as the principal
guidepost that should be followed. Id. at 84-85. Other factors
to be considered are "the skill required; the source of the
instrumentalities and tools; the location of the work; the
duration of the relationship between the parties; whether the
hiring party has the right to assign additional projects to the
hired party; the extent of the hired party's discretion over
when and how long to work; the method of payment; the hired
party's role in hiring and paying assistants; whether the work

Civil No. 09-1918(JAG)                                          9

is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party." Speen v. Crown Clothing Corp., 102 F.3d 625 (1st Cir. 1996)(citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323-24 (1992)).

Andujar has presented sufficient issues of fact regarding her status as an employee. It is true that Andujar has introduced these issues of fact through her affidavit. However, the Court does not agree with D'Mart that the affidavit is a sham and should be disregarded. As a result, D'Mart is not entitled to *brevis* disposition on the claim that D'Mart was not Andujar's employer.

### C. *Prima facie* case of discrimination based on pregnancy

D'Mart's next line of argument is that Andujar failed to make a *prima facie* case of discrimination. D'Mart's argument seems to be premised mostly on arguing that the second and fourth factors of the McDonnell Douglas balancing scheme were not met.

"To establish a *prima facie* case … [the plaintiff] must show that: (1) she was pregnant or indicated an intention to become pregnant and (2) she was qualified for the position; but (3) she suffered an adverse employment action when she was rejected (4) in favor of a similarly qualified individual." Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004). This burden is not onerous. Martinez-Burgos v. Guayama Corp., 656 F.3d 7, 12 (1st Cir. 2011). "Satisfaction of the *prima facie* burden creates a rebuttable presumption that discrimination prompted the challenged adverse employment action." Id. (citing Cumpiano v. Banco Santander P.R., 902 F.2d 148, 153 (1st Cir. 1990)). D'Mart may rebut this presumption by articulating a non-discriminatory reason for the adverse employment action. This

Civil No. 09-1918(JAG)                                              10

shifts the burden back to Andujar to demonstrate that the proffered reason is mere pretext. Martinez-Burgos, 656 F.3d at 12 (citing Smith v. F.W. Morse & Co., Inc., 76 F.3d 413 (1st Cir. 1996). The analysis regarding whether or not an employer's proffered reason is actually pretext for discrimination should focus on the perception of the decisionmaker. Mesnick v. Gen. Elec. Co., 950 F.2d 816 (1st Cir. 1991). In other words, the Court must focus on whether the employer believed its stated reason to be credible. Id. (citing Gray v. New England Tel. and Tel. Co., 792 F.2d 251, 256 (1st Cir.1986)). However, the employer's good faith is not automatically conclusive. Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40 (1st Cir. 2002). "Conversely, there may be pretextual explanations - ones not honestly believed by the decisionmaker - which do not lead to liability because the actual unadmitted reason still does not constitute discrimination." Id.

According to D'Mart, Andujar did not suffer an adverse employment action. D'Mart states that Andujar was simply not rehired upon her refusal to sign a contract. The Court disagrees with D'Mart and understands that Andujar has made a sufficient showing of a *prima facie* case of discrimination and retaliation. The facts at issue in this case are not quite as simple as D'Mart suggests. The record reflects that Andujar received a new contract and she refused to sign it because she understood that she had a right to maternity leave. Once Andujar refused to sign the contract, she was dismissed. The Court understands that this is sufficient to constitute an adverse employment action due to the failure to rehire her in light of the undemanding nature of the *prima facie* standard.

As to the fourth factor, the Court understands that the record reflects via Andujar's affidavit that Mr. Marcos Rolon

Civil No. 09-1918(JAG)                                               11

was hired to replace her. Thus, the Court finds that Andujar has
sufficiently established a *prima facie* case of discrimination.

D'Mart proceeds to argue that even if Andujar has
successfully satisfied the *prima facie* standard, D'Mart has
rebutted any presumption of discrimination. D'Mart argues that
its reason for dismissing Andujar was legitimate and therefore
rebuts any presumption of discrimination.

D'Mart argues that even though Andujar names three
different professors who were not fired despite their refusal to
sign the same contract as Andujar, the Court should conclude
that there was no discrimination in this case. D'Mart states
that Mr. Juan Rodriguez, one of the professors who refused to
sign the contract, should not be taken into consideration
because Mr. Juan Rodriguez has been employed by D'Mart since
1998 and was not similarly situated to Andujar. D'Mart posits
that two other professors, Mr. Edward Rodriguez and Mr. Juan
Miranda, who refused to sign the same contract as Andujar did
eventually sign their respective contracts. According to D'Mart,
the fact that Mr. Edward Rodriguez and Mr. Juan Miranda
eventually signed employment contracts should lead the Court to
conclude that Andujar and these professors were not similarly
situated.

D'Mart also alleges that nothing in the record sustains
that individuals hired to provide services as an independent
contractor continue their working relationship without signing a
contract. The Court has already stated that there exists a
genuine issue regarding whether or not Andujar was an employee.
Moreover, D'Mart's argument that the Court should not take into
account the fact that Mr. Juan Rodriguez, Mr. Edward Rodriguez,
and Mr. Juan Miranda remained employed seems disingenuous.
D'Mart's own motion admits that Mr. Juan Rodriguez has not
signed a contract since 2004. Moreover, although Mr. Edward

Civil No. 09-1918(JAG)                                                  12

Rodriguez and Mr. Juan Miranda did eventually sign employment
contracts these were signed in May and June 2008, respectively.
In contrast, Andujar, who refused to sign the same contract as
Mr. Edward Rodriguez and Mr. Juan Miranda in January 2008, was
immediately released from employment.

     The Court has significant difficulty concluding that the
decision to not rehire Andujar was the product of legitimate
business reasons. Moreover, the Court looks at the evidence of
discrimination not in "splendid isolation" but at the record in
its entirety. Mesnick v. General Elec. Co., 950 F.2d 816, 824
(1st Cir. 1991)(stating that in the ADEA context courts will
look at evidence of discrimination as "part of an aggregate
package of proof offered by the plaintiff.") In light of the
record, the short time span between Andujar's maternity status
and D'Mart's decision not to allow plaintiff to work without a
contract, the disputed facts as to the reasons for D'Mart's
business reorganization, and Andujar's *prima facie* case the
Court concludes that the grant of summary judgment would be
improper at this stage.

### D. The Magistrate's conclusion regarding genuine issues of material fact in dispute

     Lastly, D'Mart posits that Andujar has failed to
demonstrate that a trial-worthy issue persists. As a result,
D'Mart urges the Court to grant its summary judgment motion.

     D'Mart argues that Andujar is complaining of three
incidents. These are: (1) an incident in which Andujar was
admonished for wearing maternity jeans; (2) an incident in which
Andujar was admonished for eating inside the classroom; and (3)
an incident in which Ms. Rivera told Andujar that she expected
her to be fatter than she was due to her pregnancy.

Civil No. 09-1918(JAG)                                          13

D'Mart posits that when Andujar wore jeans to work, she was
in violation of the dress code. Although that may be true,
Andujar has also advanced arguments that other professors wore
jeans and that she was admonished because she wore maternity
jeans, thereby creating a factual issue. Similarly, D'Mart
argues that Andujar was only admonished once for eating in the
classroom. However, Andujar also claims that professors
routinely ate in the classroom and that she was admonished due
to her pregnancy. As to the third factor, D'Mart avers that Ms.
Viera's comment calling her fat was a stray remark and that such
remarks are insufficient to prove discrimination by direct
evidence. Morales-Cruz v. University of Puerto Rico, 2012 WL
1172064 at *5 (1st Cir. 2012). However, the Court believes that
in light of the entirety of the record Andujar has made a *prima
facie* case of discrimination and successfully shown that
D'Mart's proffered legitimate business reason for the adverse
employment action was pretextual. Thus, the Court finds that
summary adjudication would be inappropriate.

Lastly, D'Mart's motion for reconsideration objects to the
following statement made by the Magistrate:

> Where the elements of a sufficient *prima facie*
> case combine with the fact finder's belief that
> the ostensible basis for dismissing and/or
> adverse employment action was pretextual,
> particularly if … accompanied by a suspicion of
> mendacity, the fact finder is permitted to infer
> the intentional discrimination required to even
> enable plaintiff-employee prevail on the merits.

The Magistrate attributed this statement to St. Mary's
Honor Center v. Hicks, 509 U.S. 502 (1993). D'Mart states that
it could not find the referenced construction of the statement.
D'Mart also argues that St. Mary's Honor Center is inapplicable

Civil No. 09-1918(JAG)                                                   14

to this case because in <u>St. Mary's Honor Center</u> the court had
held hearings and held testimony. D'Mart posits that the portion
of the Magistrate's motion that reads "particularly if …
accompanied by a suspicion of mendacity" should not be applied
because no assertion can be made as to D'Mart's credibility in
this case.

Upon a review of the case, the Court understands that the
passage that D'Mart objects to is paraphrasing the following
sentence: "The factfinder's disbelief of the reasons put forward
by the defendant (particularly if disbelief is accompanied by a
suspicion of mendacity) may, together with the elements of the
*prima facie* case, suffice to show intentional discrimination."
<u>Id.</u> at 510. .

The <u>St. Mary's Honor Center</u> decision led to the application
of inconsistent standards in our Circuit due to the rather
confusing nature of that Supreme Court opinion. <u>See</u> <u>Daley v.
Wellpoint Health Networks, Inc.</u>, 146 F.Supp.2d 92, 103 (D. Mass.
2001). However, the inconsistency was resolved in <u>Reeves v.
Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 147-148 (2000).
In <u>Reeves</u>, the Supreme Court stated that plaintiff's *prima facie*
case, when combined with sufficient evidence to find that the
employer's asserted justification is pretextual, may permit the
trier of fact to conclude that the employer unlawfully
discriminated. Moreover, summary judgment is disfavored in fact-
intensive disparate treatment cases. <u>Daley</u>, 146 F.Supp.2d at
103. As a result, the Court finds that the holding in <u>Reeves</u>, as
well as the fact intensive nature of this case, militates
against granting summary judgment. In light of this discussion,
the Court finds little need to delve deeper into the
Magistrate's citation of <u>St. Mary's Honor Center</u>.

Civil No. 09-1918(JAG)                                              15

**CONCLUSION**

In light of the foregoing, the Court **ADOPTS** the Magistrate's Report and Recommendation and **DENIES** D'Mart's summary judgment motion.


**IT IS SO ORDERED**


In San Juan, Puerto Rico, this 25th day of April, 2012.


                                   S/ Jay A. García-Gregory
                                   JAY A. GARCÍA-GREGORY
                                   United States District Judge